UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GABRIELA MARTINEZ-AMEZAGA,

                              Plaintiff,

              -against-

NORTH ROCKLAND CENTRAL SCHOOL
DISTRICT a/k/a Haverstraw-Stony Point
Central School District, et al.,

                              Defendants.

**OPINION AND ORDER**

21-CV-00521 (PMH)

PHILIP M. HALPERN, United States District Judge:

Gabriella Martinez-Amezaga ("Plaintiff") initiated this action, *pro se*, on January 20, 2021.

(Doc. 1). She then filed, through counsel, a First Amended Complaint on May 3, 2021. (Doc. 19).

Plaintiff therein asserted five claims for relief against defendants the North Rockland Central

School District (the "District"), the Board of Education of the North Rockland Central School

District (the "Board"), Ileana Eckert ("Eckert"), Eric Baird ("Baird"), Kris Felicello ("Felicello"),

Farid Johnson ("Johnson"), Avis Shelby ("Shelby"), and Sarah Sorensen ("Sorensen"): three

claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.;

one claim under the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq*.,

for discrimination based on national origin, retaliation, and hostile work environment; and a claim

under 42 U.S.C. § 1983 for deprivation of due process rights under the Fourteenth Amendment.[1]

The Court, after hearing oral argument, ruled from the bench on June 9, 2022, granting in

part a motion to dismiss the Amended Complaint. (Doc. 35; Doc. 39, "Tr."). Specifically, the Court

dismissed Plaintiff's Third Claim for Relief under Title VII, Fourth Claim for Relief under 42

U.S.C. § 1983 for deprivation of due process rights, and Fifth Claim for Relief under the NYSHRL

---

[1] Citations to the documents referenced herein correspond to the pagination generated by ECF.

as against all defendants to the extent it purported to state a hostile work environment claim, and as against all defendants except Johnson and Shelby as to the remaining theories alleged in that claim. The Court dismissed Plaintiff's claims against the individual defendants Eckert, Baird, Felicello, and Sorensen. The Court further dismissed Plaintiff's First and Second Claims for Relief under Title VII as alleged against the remaining individual defendants Johnson and Shelby.

As a result, the only claims remaining in this action are Plaintiff's First Claim for Relief only to the extent it alleges Title VII discrimination based on national origin against the District and Board; Plaintiff's Second Claim for Relief only to the extent it alleges Title VII retaliation against the District and Board; and Plaintiff's Fifth Claim for Relief only to the extent it alleges NYSHRL discrimination and retaliation against Johnson and Shelby. Defendants the District, Board, Johnson, and Shelby ("Defendants") filed an Answer to the Amended Complaint on July 11, 2022 (Doc. 40), and the parties thereafter engaged in discovery on Plaintiff's remaining claims pursuant to a Civil Case Discovery Plan and Scheduling Order. (Doc. 42).

Defendants filed their motion for summary judgment in accordance with the briefing schedule set by the Court. (Doc. 61; Doc. 62, "Def. Br."; Doc. 63, "56.1"; Doc. 64—Doc. 68;[2] Doc. 69, "Sweeney Decl."; Doc. 70, "Collins Decl."). Plaintiff opposed Defendants' motion (Doc. 60, "Pl. Br."), and the motion was fully briefed with the filing of Defendants' reply papers (Doc. 72, "Reply"; Doc. 73).

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

---

[2] Plaintiff, throughout the Rule 56.1 Statement and in her opposition brief, contends that affidavits submitted by Defendants on this motion may not be considered by the Court because they were not produced in discovery and/or were specifically "crafted for Defendants' summary judgment motion." (Pl. Br. at 24). There is no prohibition against this Court's consideration of affidavits submitted in support of a motion for summary judgment. Indeed, Federal Rule of Civil Procedure 56(c) provides specifically that the moving party "must" support its factual assertions by citation to, *inter alia*, "affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A).

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement and Plaintiff's responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

On September 1, 2015, Plaintiff began her employment with the District as a non-tenured, probationary bilingual school psychologist. (56.1 ¶ 4). Plaintiff's period of probation was for four years, to conclude on August 31, 2019. (*Id*.). Plaintiff agreed to the four-year probationary appointment and worked at the West Haverstraw and Farley elementary schools during the 2015-2016, 2016-2017, and 2017-2018 school years, and at Farley and Stoney Point elementary schools for the 2018-2019 school year. (*Id*. ¶¶ 5-6). Shelby was Plaintiff's supervisor at Farley and Johnson and Laura Sweeney ("Sweeney") were her supervisors at Stoney Point. (*Id*. ¶ 6).

Plaintiff was a member of the teacher's union, subject to the collective bargaining agreement in place between the North Rockland Teachers' Association and the District during the relevant time period (the "CBA"). (*Id*. ¶ 7; Collins Decl., Ex. W at 25:23-26:18). Pursuant to the CBA, year-end evaluations of teachers are completed by building-level administrators. (56.1 ¶ 9). The CBA also provides that administrators may conduct observations of teachers. (*Id*.). In December 2018, Johnson attempted to schedule his observation of Plaintiff during a student counseling session. (*Id*. ¶ 10; Collins Decl., Ex. J). Plaintiff responded and informed Johnson that he was precluded from observing her during a counseling session without first obtaining parental consent. (56.1 ¶ 11).

Johnson instead conducted an observation of Plaintiff on December 20, 2018 during a CSE meeting. (*Id*. ¶ 27). Following the observation, on December 20, 2018, Plaintiff, Johnson, and

Sorensen had a meeting. (*Id*. ¶ 30). Among other things discussed, Johnson told Plaintiff that she

"rushed a little" when she spoke during the CSE meeting and suggested she "speak a little slower."

(*Id*.). Following Johnson's comment, Sorensen mentioned to Plaintiff that parents had informed

her that they had difficulty understanding Plaintiff because of her accent. (*Id*. ¶ 31).[3] Neither

Johnson nor Sorensen mentioned Plaintiff's national origin during that meeting. (*Id*. ¶ 32).

Johnson's report of the December 20, 2018 observation, dated January 28, 2019, stated that, *inter

alia*, Plaintiff should be "mindful of the speed of her voice," and that although meetings should

proceed "in a timely matter," it was also important "to ensure that we talk at a speed that comes

across clearly and concisely when communicating at such an important meeting." (*Id*. ¶¶ 28, 29;

Collins Decl., Ex. O). The observation report also included comments concerning Plaintiff's lack

of collegiality, with suggestions for Plaintiff to be more collaborative with her colleagues and to

reflect on feedback from colleagues/administration rather than becoming defensive. (Collins Decl.,

Ex. O). The report also noted concern about Plaintiff's fitness for continued employment. (*Id*.).

There is no mention of Plaintiff's national origin in that January 28, 2019 observation report. (*Id*.).

Plaintiff, on December 20, 2018 following the meeting, emailed Sorensen with a copy to

Johnson, noting that she felt it was not acceptable for Sorensen to mention her accent. (*Id*., Ex. P).

Plaintiff did not state that she felt discriminated against on the basis of her national origin. (*Id*.).

---

[3] The Local Rules of the United States District Courts for the Southern and Eastern Districts of New York instruct that a "paragraph in the [movant's] statement of material facts . . . will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c). Furthermore, "[e]ach statement by the . . . opponent . . . including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible . . . ." *Id*. at 56.1(d). Plaintiff, who is represented by counsel, did not comply with Local Civil Rule 56.1 in many respects, including failing to provide citation showing a disputed material fact and pressing improper argument. (*See, e.g.*, 56.1 ¶¶ 2, 8, 12-13, 15-26, 31-32, 34, 36, 38, 42, 45-47, 49, 51-52, 56, 58-65, 68-80, 82, 86-87). Defendants pointed out Plaintiff's non-compliance with Local Civil Rule 56.1 in their moving brief, but Plaintiff did not attempt to remedy it. Under these circumstances, the Court "deem[s] admitted the facts asserted in [Defendants'] Local Rule 56.1 statement because they were not specifically controverted by [Plaintiff] in the manner demanded by Local Rule 56.1." *Malarczyk v. Lovgren*, No. 22-504, 2023 WL 8073099, at *1 (2d Cir. Nov. 21, 2023).

Plaintiff forwarded her email to Felicello on January 4, 2019. (56.1 ¶ 35).  Plaintiff, on January 7, 2019, emailed Felicello and informed him of the process by which she believed that her observations and evaluations should proceed, proposing that, rather than having her supervisors—the building administrators who are required by the CBA to perform observations and evaluations—observe and evaluate her, another school psychologist could do so, and particularly one who had both tenure "and a doctorate." (*Id.* ¶ 14). Plaintiff's January 7, 2019 email likewise did not state that she felt discriminated against on the basis of her national origin, but stated she considered Sorensen's "comments about my English . . . prejudicial comments." (Collins Decl., Ex. K).

On January 14, 2019, Johnson and Sweeney met with Plaintiff in Plaintiff's office wherein Sweeny advised Plaintiff that a student's parent had expressed concern over Plaintiff performing an evaluation of the student for special education services in light of the student's auditory processing disorder, Plaintiff's accent, and the parent's difficulty understanding Plaintiff. (Collins Decl., Ex. X; *id.*, Ex. W at 6:8-13; *id.*, Ex. A at 257:11-259:23; 56.1 ¶ 48). Johnson and Sweeny told Plaintiff to hold off on this student's evaluation until they told her how they would proceed. (56.1 ¶ 49; Sweeney Decl., Ex. B). Plaintiff responded that she understood and would hold off. (56.1 ¶ 50). Plaintiff then called the parent and advised Johnson and Sweeney that she was going to continue with the student's evaluation, and in fact did so. (*Id.* ¶¶ 51, 56; Sweeney Decl., Ex. B). Johnson thereafter issued Plaintiff a counseling memorandum on January 23, 2019 for insubordination. (56.1 ¶ 59; Sweeney Decl., Ex. B; Doc. 60-11). There was no mention of Plaintiff's national origin in the January 23, 2019 counseling memorandum. (Sweeney Decl., Ex. B; Doc. 60-11).

On January 28, 2019, Plaintiff sent to Baird an internal complaint alleging national origin discrimination and retaliation against Johnson and Sorensen. (56.1 ¶ 81). Baird, following an investigation, issued his findings in a memorandum to Plaintiff, concluding that Plaintiff's claims of discrimination and retaliation were unfounded. (Collins Decl., Ex. II).

Shelby, on March 12, 2019, conducted Plaintiff's second observation of the school year, which occurred during two CSE meetings. (56.1 ¶ 39). Shelby conducted Plaintiff's third observation on March 27, 2019. (*Id*. ¶ 40). Plaintiff resisted observation during a counseling session unless parental consent was first obtained (*id*. ¶ 38), and so Plaintiff requested consent from the students' parents prior to the March 27, 2019 observation which was ultimately conducted during a group counseling session (*id*. ¶¶ 40-41). Shelby also prepared written observation reports following each observation. (Collins Decl., Exs. S, T). There is no mention of Plaintiff's national origin in Shelby's observation reports. (*Id*.).

Eckert notified Plaintiff by letter dated May 3, 2019 that she would be recommending to the Board to terminate Plaintiff's probationary employment, effective July 5, 2019. (56.1 ¶ 83). The reasons given for the termination included "insubordinate behavior and incidents where [Plaintiff] demonstrated a significant lack of collegiality." (*Id*.). Specifically, Eckert noted Plaintiff's insubordinate behavior "include[d] [her] resistance to observations of [her] performance in individual or group counseling sessions on the unfounded basis that [her] communications with students in a session are privileged," despite being informed her interpretation of the law was incorrect, and her attempt to create her "own performance observations procedure." (*Id*.). Eckert also noted the incident in which Plaintiff called a parent and proceeded with the evaluation of the parent's son after being told not to proceed with that evaluation by Johnson and Sweeney, as well as Plaintiff's lack of respect toward colleagues identified by unnecessarily accusatory

communications and demands that teachers complete paperwork in short timeframes. (*Id.*; *see also id*. ¶¶ 64-80). By letter dated June 6, 2019, Plaintiff was informed the Board voted at its June 4, 2019 meeting and approved Eckert's recommendation for Plaintiff's termination. (*Id.* ¶ 84).

Plaintiff's name and employment termination were included in the June 4, 2019 Board minutes under the Consent Agenda item for Personnel Actions. (*Id.* ¶ 85). Individuals' names regularly appear in Board minutes and/or agenda items for personnel matters, including termination. (*Id.* ¶ 86). No individual was identified in such Board documents because of their protected status(es) or in retaliation for engaging in any protected activity. (*Id.* ¶ 87).

On or about June 20, 2019, Shelby completed Plaintiff's 2018-2019 yearly evaluation. (*Id.* ¶ 43; Collins Decl., Ex. U). Plaintiff submitted a written response to the yearly evaluation in which she, *inter alia*, stated that Shelby was "not qualified to assess a Psychologist during counseling since [Shelby] is not a [sic] trained as a School Psychologist." (56.1 ¶ 44). There is no mention of Plaintiff's national origin in Shelby's yearly evaluation report. (*Id.* ¶ 45; Collins Decl., Ex. U).

On October 3, 2019, Plaintiff commenced an Article 78 proceeding in State Court against Defendants and others. *Martinez Amezaga v. N. Rockland Cent. Sch. Dist.*, No. 035656/2019 (N.Y. Sup. Ct. Rockland Cnty. Oct. 3, 2019). On March 18, 2021, the State Court issued a Decision, Order, and Judgment, denying the Petition and finding, *inter alia*, that the Board's decision to terminate her employment and deny tenure was supported by a rational basis, including evidence of Plaintiff's insubordinate behavior. *Id.* at NYSCEF Doc. No. 95 ("State Court Decision").

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

"Courts have acknowledged the dangers of summary judgment in discrimination cases: 'Because direct evidence of . . . discriminatory intent will rarely be found, affidavits and

depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Benson v. Fam. Dollar Stores, Inc.*, No. 12-CV-01457, 2017 WL 11576213, at *3 (N.D.N.Y. Mar. 31, 2017) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted)), *aff'd sub nom. Benson v. Fam. Dollar Operations, Inc.*, 755 F. App'x 52 (2d Cir. 2018).

## ANALYSIS

I.   National Origin Discrimination

Plaintiff's First Claim for Relief alleges discrimination on the basis of her national origin in violation of Title VII. "Claims of discrimination under Title VII are analyzed at the summary judgment stage under the burden-shifting test announced by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Howard v. City of New York*, 302 F. Supp. 2d 256, 260 (S.D.N.Y. 2004), *aff'd*, 363 F. App'x 805 (2d Cir. 2010). Plaintiff's Fifth Claim for Relief also asserts a national origin discrimination claim under the NYSHRL. Claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *see also Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("We will for purposes of this opinion assume that the standards of proof applicable to plaintiff's Title VII and Human Rights Law claims are the same in all relevant respects.").[5]

Phase one of the *McDonnell Douglas* test places upon the plaintiff the burden of establishing a *prima facie* case of discrimination by alleging that: "(1) [s]he is a member of a protected class; (2) [her] job performance was satisfactory; (3) [s]he was subject to an adverse employment action; [and] (4) the adverse employment action occurred under circumstances giving

---

[5] Several amendments to the NYSHRL, "the effect of which is to render the standard for claims closer to the standard of the [New York City Human Rights Law] . . . . only apply to claims that accrue on or after the effective date of October 11, 2019; they do not apply retroactively to Plaintiff's claims here." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 233 n.14 (S.D.N.Y. 2021).

rise to an inference of discrimination based on [national origin]." *Woods v. Ruffino*, 8 F. App'x 41, 42 (2d Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802).

If the plaintiff sets forth a *prima facie* case of discrimination, "the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 397 (S.D.N.Y. 2013) (quoting *McDonnell Douglas*, 411 U.S. at 802-03), *aff'd*, 586 F. App'x 739 (2d Cir. 2014). "If the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the *prima facie* case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

A.  Phase One: *Prima Facie* Case of Discrimination

Defendants do not dispute that Plaintiff has met the first two elements of her *prima facie* case of discrimination. Defendants argue however, *inter alia*, that the only adverse employment action to which Plaintiff was subjected was her termination, effective July 5, 2019. (Def. Br. at 24-26). Plaintiff failed to respond to Defendants' argument concerning the actions preceding her termination, suggesting they "were not adverse action[s] per se" as regards her claim of discrimination. (Pl. Br. at 24-25). "Plaintiff effectively concedes defendants' other arguments of non-adverse action by her failure to respond to them." *Rosenblatt v. City of New York*, No. 05-CV-05521, 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007); *see also Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021) ("Plaintiff chose consciously, by his silence [in opposition], to waive and abandon any argument he could have

made."). Accordingly, the only actionable adverse action that has not been abandoned is Plaintiff's termination from employment.

The question then at the first phase of the *McDonell Douglas* test is whether Plaintiff has established that her termination occurred under circumstances giving rise to an inference of discrimination based on national origin. Defendants argue that the record is devoid of any direct or circumstantial evidence of discriminatory intent. Plaintiff maintains that criticism concerning the speed of her voice and accent evidences Defendants' discriminatory intent. However, "[l]anguage, by itself, does not identify members of a suspect class." *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983). In other words, Title VII "does not protect against discrimination on the basis of language. Neither Title VII nor common understanding equates national origin with the language that one chooses to speak." *Brewster v. City of Poughkeepsie*, 447 F. Supp. 2d 342, 351 (S.D.N.Y. 2006). That Defendants spoke to or even critiqued Plaintiff concerning the speed of her voice and the difficulty others had in understanding her accent is insufficient on its own to establish discriminatory intent. Indeed, "[i]t is unreasonable to suggest that a comment about someone speaking too loud, or too much, or with an accent, evidences an underlying bias about that individual's national origin." *Manessis v. New York City Dep't of Transp.*, No. 02-CV-00359, 2003 WL 289969, at *8 (S.D.N.Y. Feb. 10, 2003), *aff'd sub nom. Manessis v. Chasin*, 86 F. App'x 464 (2d Cir. 2004). Neutral, constructive comments about a plaintiff's accent or inability to understand plaintiff, without more, is simply not a predicate upon which to infer discriminatory animus on the basis of national origin. *See, e.g., Ghose v. Century 21, Inc.*, 12 F. App'x 52, 55 (2d Cir. 2001); *Grant v. Cont'l Cas. Co.*, No. 13-CV-05675, 2015 WL 1499724, at *8 (S.D.N.Y. Mar. 30, 2015); *Anand v. New York State Div. of Hous. & Cmty. Renewal*, No. 11-CV-09616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013); *Ponniah Das v. Our Lady of Mercy Med. Ctr.*, No. 00-

CV-02574, 2002 WL 826877, at *10 (S.D.N.Y. Apr. 30, 2002), *aff'd sub nom. Das v. Our Lady of Mercy Med. Ctr.*, 56 F. App'x 12 (2d Cir. 2003).

Moreover, the comments concerning Plaintiff's speech were made in the context of supervisory feedback, in the form of recommendations that she be "mindful of the speed of her voice" (Collins Decl., Ex. O); and in a meeting wherein administrators advised Plaintiff of a student's parental concern regarding her evaluation of the student (*id.*, Ex. X, Ex. W at 6:8-13, Ex. A at 257:11-259:23; 56.1 ¶ 48). Thus, "[Plaintiff's] position is especially meritless in light of the fact that [Defendants] made these comments in the context of performance reviews and her language skills were reasonably related to her job performance. These considerations further weigh against finding that the comments evince discriminatory animus." *Kho v. New York & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 719-20 (S.D.N.Y. 2018).

Other than the speculative contention that Defendants' feedback concerning her speech is evidence of discriminatory animus, Plaintiff contends that her December 20, 2018 meeting with Johnson and Sorensen, the Johnson and Shelby observation reports, her January 14, 2019 meeting with Johnson and Sweeney, the January 23, 2019 counseling memo, Shelby's March 2019 observation, Shelby's 2018-2019 yearly evaluation report, and the notation of Plaintiff's name in the Board minutes all somehow indicate discriminatory animus. (Pl. Br. at 25-26). Plaintiff has not explained what exactly about these events elicit, even circumstantially, an inference of discrimination beyond the mere fact that some—not all—concerned feedback about the speed with which Plaintiff spoke and/or expressed difficulty understanding her. The Court cannot divine discriminatory animus from these events and documents which are "devoid of direct or even oblique reference to national origin." *Grant*, 2015 WL 1499724, at *8.

Moreover, the record demonstrates that Plaintiff was hired and fired by the same entity—the Board—upon recommendation of the same Superintendent, Eckert. (Collins Decl. Exs. E-F, JJ-KK.) "An inference against discriminatory intent" is therefore established "absent . . . evidence that the supervisor made any discriminatory comments." *Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016). Plaintiff has not alleged, let alone established through admissible evidence, that Eckert made any discriminatory comments. In any event, evidence of stray comments and personal biases are insufficient, without more, to demonstrate that national origin discrimination was a determinative factor in an adverse employment decision. *Monte v. Ernst & Young LLP*, 330 F. Supp. 2d 350, 363 (S.D.N.Y. 2004), *aff'd*, 148 F. App'x 43 (2d Cir. 2005).

Plaintiff fails to offer proof in admissible form and beyond the four corners of her own mind necessary to create a triable issue of fact as to any inference of discrimination based on her national origin. *Jackson v. Beacon City Sch. Dist.*, No. 19-CV-08164, 2022 WL 17904563, at *4 (S.D.N.Y. Dec. 23, 2022). Accordingly, Plaintiff fails to meet her burden to establish a *prima facie* case of national origin discrimination.

### B.  Phases Two and Three: Legitimate, Non-Discriminatory Reason and Pretext

Even if Plaintiff had met her burden to establish that her termination occurred under circumstances giving rise to an inference of discrimination, Defendants contend that they have established legitimate, non-discriminatory reasons for her termination and that Plaintiff has failed to demonstrate that those reasons were a mere pretext for unlawful discrimination.

The record is replete with evidence of Plaintiff's insubordinate and non-collegial conduct, as discussed more fully *supra*. (*See also* 56.1 ¶¶ 14-15, 26, 38, 41-42, 49, 51-53, 56, 59, 64-80; State Court Decision at 4-5). Insubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee. *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000).

14

"[I]nappropriate behavior is indisputably a legitimate non-discriminatory reason for dismissing [an employee] from [employment]." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 644 (2d Cir. 2012); *see also Johnson v. L'Oreal USA*, No. 21-2914-CV, 2023 WL 2637456, at \*4, \*6 (2d Cir. Mar. 27, 2023) (record of plaintiff's disrespectful conduct towards her supervisor, peers, and subordinates, including sending inappropriate text messages, "provide[d] ample support for L'Oréal's asserted non-discriminatory reasons for Johnson's termination."). Defendants have satisfied their burden and established a legitimate, non-discriminatory reason for the adverse employment action, regardless of the truth of the allegations against her concerning insubordination and non-collegiality. *See Wade v. N. Y. City Dep't of Educ.*, 667 Fed. App'x 311 (2d Cir. 2016) (the truth of the allegations against the employee resulting in termination are immaterial); *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case, however, we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what motivated the employer . . . ; the factual validity of the underlying imputation against the employee is not at issue.").

The burden then shifts back to Plaintiff to demonstrate that Defendants' reasons were a pretext for discrimination. *Osekavage v. Sam's East., Inc.*, 619 F. Supp. 3d 379, 390 (S.D.N.Y. 2022). Plaintiff has offered nothing more to demonstrate pretext than the same arguments she advanced to support an inference of discrimination on her *prima facie* case. And, for the same reasons set forth above concerning that element of the *prima facie* case, the Court finds that Plaintiff has failed to establish that the legitimate, non-discriminatory reasons proffered by Defendants for her termination were a pretext for unlawful discrimination.

"[T]here is neither a strong *prima facie* case, nor credible evidence that the employer's explanation was not held in good faith, nor any direct evidence [of discriminatory intent]." *Flynn*,

2018 WL 794631, at *12. Accordingly, Plaintiff's First Claim for Relief under Title VII and Fifth Claim for Relief alleging discrimination under NYSHRL fail as a matter of fact and law and cannot withstand summary judgment.

## II.   Retaliation

Plaintiff's Second and Fifth Claims for Relief allege retaliation in violation of Title VII and the NYSHRL. To make out a *prima facie* case of retaliation, "a plaintiff must demonstrate that (1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. New York City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023); *see also Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020).

A plaintiff must show "that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). "This but-for reason need not be the only cause for the employer's action; however, the plaintiff must show that the adverse action would not have occurred in the absence of the retaliatory motive." *Id*. at 846; *D'Andrea v. Nielsen*, 765 F. App'x 602, 605 (2d Cir. 2019). Causation, under this but-for standard, can be proven either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000); *see also Zann Kwan*, 737 F.3d at 845 ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie* stage on summary judgment or at

trial indirectly through temporal proximity."). Once a plaintiff has established a *prima facie* showing of retaliation, the burden then shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse employment action. *Zann Kwan*, 737 F.3d at 845. The plaintiff must then demonstrate that the non-retaliatory reason is a mere pretext for retaliation. *Id*.

The only protected activity in which Plaintiff engaged was her January 28, 2019 complaint to Baird. While Plaintiff contends that her December 20, 2018 email to Sorensen and her January 4 and 7, 2019 emails to Felicello constitute protected activity, the Court is not persuaded that any rational trier of fact could view that evidence as complaints concerning national origin discrimination. "While it is unnecessary for an individual to specifically invoke the word discrimination when complaining in order to alert her employer to her protected activity, there must be some basis to conclude that the employer was aware that the plaintiff engaged in protected activity." *Lucio v. New York City Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014).

Plaintiff's December 20, 2018 and January 4, 2019 emails simply note that she felt it was not acceptable for Sorensen to mention her accent because she has good relationships with Spanish-speaking parents and thanks Sorensen for her comments. (Collins Decl. at Ex. P). Plaintiff's January 7, 2019 email forwards an email chain about an event that occurred before any comment about her speech was made to her, complains that Johnson and Sorensen "bullied" her, and notes that she considered Sorensen's "comments about my English . . . prejudicial comments." (*Id*., Ex. K). "A plaintiff's belief [that he or she was opposing an employment practice made unlawful by Title VII] is not reasonable simply because he or she complains of something that appears to be discrimination in some form, even when the complaint cites reprehensible language or behavior." *Johnson v. City Univ. of New York*, 48 F. Supp. 3d 572, 576 (2d Cir. 2014). Complaints about bullying and harassment, regardless of whether it was motivated by

impermissible discrimination, are insufficient to characterize the complaints as "protected activity" of which Defendants were aware. *Id.* at 577. Thus, the only protected activity in which Plaintiff engaged was her January 28, 2019 complaint to Baird.

Plaintiff has not, however, established that her January 28, 2019 complaint to Baird was the but-for cause of her termination. The record demonstrates that Plaintiff's supervisors had concerns about her fitness for continued employment that were communicated to her. She was given feedback about the need to speak comprehensibly, to be receptive to supervisory feedback, and was issued a counseling memorandum regarding her January 14, 2019 insubordinate behavior, all before she submitted her January 28, 2019 internal complaint. "At the most basic level, defendants' allegedly retaliatory actions must occur later in time than plaintiffs' protected speech." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *7 (S.D.N.Y. Jan. 8, 2021) (quotation marks omitted), *aff'd*, 2022 WL 121281 (2d Cir. Jan. 13, 2022); *Gonzalez v. NYU Langone Hosps.*, No. 18-CV-01797, 2021 WL 4226042, at *6 (S.D.N.Y. Sept. 16, 2021), *aff'd*, No. 21-2569, 2022 WL 4372199 (2d Cir. Sept. 22, 2022) ("Plaintiff cannot establish an indirect causal connection because the disciplinary process that ultimately led to her termination began before Defendant learned of her protected activity and indisputably followed a series of prior unrelated disciplinary warnings.").

In any event, Plaintiff has not offered any evidence or argued that any evidence in the record demonstrates retaliatory animus sufficient to establish causation. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiff's failure to produce any evidence of a causal connection between the protected activity and the materially adverse action constitutes a failure of proof and is insufficient to create a genuine dispute of material fact.

Even if Plaintiff could establish a *prima facie* showing of retaliation, Defendants have proffered a legitimate, non-retaliatory reason for the adverse employment action, as discussed *supra*. *Zann Kwan*, 737 F.3d at 845. Plaintiff identifies no evidence of disparate treatment or evidence that, absent the submission of her January 28, 2019 complaint, her employment would not have been terminated. Under these circumstances, Defendants are entitled to summary judgment dismissing Plaintiff's Second and Fifth Claims for Relief alleging retaliation.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 61) is GRANTED.[6] Plaintiff's Amended Complaint is dismissed.

The Clerk of Court is respectfully requested to terminate the pending motion sequence (Doc. 61) and close this case.

SO ORDERED.

Dated: White Plains, New York
    January 16, 2024

Philip M. Halpern
United States District Judge

---

[6] In light of the Court's rulings herein, it need not and does not reach Defendants' argument that the factual findings made by the state court in the Article 78 Proceeding operate as collateral estoppel. Likewise, the Court will not consider the request made in a footnote of Defendants' reply brief to strike and/or sanction Plaintiff for filing an improperly executed and untimely declaration. (Reply at 14 n.6). This type of "motion" is procedurally improper and may be denied on that basis and without regard to its merits. *See* Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion."); *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review.").